USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1482 ANSLEY PETTIWAY, Plaintiff - Appellant, v. GEORGE A. VOSE, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary M. Lisi, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Tauro,* District Judge. ______________ _____________________ Janice M. Weisfeld, Assistant Public Defender, for _____________________ appellant. Andrea J. Mendes, Special Assistant Attorney General, with ________________ whom Jeffry B. Pine, Attorney General, was on brief for appellee. ______________ ____________________ November 12, 1996 ____________________  ____________________ * Of the District of Massachusetts, sitting by designation. TORRUELLA, Chief Judge. Defendant-Appellant Ansley S. TORRUELLA, Chief Judge. ___________ Pettiway, Jr. ("Pettiway") was tried and convicted of one count of first degree child molestation sexual assault, R.I. Gen. Laws 11-37-8.1, and one count of second degree child molestation sexual assault, R.I. Gen. Laws 11-37-8.3. He was also acquitted of two counts of first degree and one count of second degree child molestation sexual assault. Pettiway unsuccessfully appealed his conviction to the Rhode Island Supreme Court, State _____ v. Pettiway, 657 A.2d 161 (R.I. 1995), and then filed for a writ ________ of habeas corpus in the United States District Court for the District of Rhode Island, Pettiway v. Vose, 921 F. Supp. 61 (D. ________ ____ R.I. 1996). When the district court denied the writ, Pettiway filed this appeal. I. STANDARD OF REVIEW I. STANDARD OF REVIEW Our review of a harmless error determination on habeas corpus review is de novo. See Scarpa v. Dubois, 38 F.3d 1, 9 _______ ___ ______ ______ (1st Cir. 1994) ("mixed questions of law and fact arising in section 2254 cases are ordinarily subject to de novo review"); ________ Levasseur v. Pepe, 70 F.3d 187, 193 (1st Cir. 1993) ("a harmless _________ ____ error determination on habeas corpus review is a mixed question of law and fact [and] we examine this issue de novo"). Findings _______ of fact by the state court, however, are entitled to great deference on federal habeas review. See 28 U.S.C. 2254(d); Tart ___ ____ v. Commonwealth of Massachusetts, 949 F.2d 490, 504 (1st Cir. ______________________________ 1990). -2- II. BACKGROUND II. BACKGROUND The principal facts of this case are summarized in the opinion of the state Supreme Court on direct review, State v. _____ Pettiway, 657 A.2d 161 (R.I. 1995), and the opinion of the ________ federal district court on collateral review, Pettiway v. Vose, ________ ____ 921 F. Supp. 61, 61-62 (D. R.I. 1996), therefore, we present only a brief factual review. At trial, Pettiway was not permitted to enter into evidence a report of the Department of Children, Youth, and Families ("DCYF") which included allegations that the victim had been sexually abused by two other men whom her mother had brought home. These incidents were alleged to have taken place subsequent to the abuse by defendant. See State v. ___ _____ Pettiway, 657 A.2d at 163. In addition to the testimony of the ________ victim, the prosecution relied on a written confession and the testimony of two police detectives who stated that Pettiway made an oral confession. Such other facts as may be pertinent will be discussed as they arise in this opinion. III. LEGAL ANALYSIS III. LEGAL ANALYSIS On direct review, the Rhode Island Supreme Court held, and neither party disputes, that the trial court's ruling limiting Pettiway's ability to cross-examine the complaining witness violated Pettiway's Sixth Amendment right to confrontation. See State v. Pettiway, 657 A.2d at 163-64. The ___ _____ ________ state Supreme Court also concluded, however, that the denial of -3- Pettiway'sright to confrontation was harmless error. Id. at 164. ___ We now review Pettiway's petition for habeas corpus. In order to prevail Pettiway must show that the trial-type constitutional error, considered in light of the record as a whole, had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. ______ __________ 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. _________ ______________ 750, 776 (1946)). In Bowling v. Vose, 3 F.3d 559 (1st Cir. _______ ____ 1993), this Court stated that "the inquiry entails a determination of the exact nature and force of [the] proposed testimony and an effort to place [the] testimony within the context of the evidence as a whole. In short, the weight of [the] testimony must be balanced against the weight of the inculpatory evidence." Id. at 563.1 Relevant factors to be ___ considered in determining whether the jury was substantially swayed by the error include: "(1) the extent to which the error permeated the proceeding, (2) the centrality of the issue affected by the error to the case as actually tried, and (3) the relative strength of the properly admitted evidence of guilt."  ____________________ 1 Neither party mentioned in its brief or at oral argument the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1218, which amends the habeas corpus provisions of 28 U.S.C. 2254. We need not, however, attempt to navigate the amended statute in this case. Using the pre- amendment habeas corpus requirements established by this Court, we find that defendant-appellant's request for relief must be denied. Because the amendments make habeas corpus relief more difficult to obtain, the result would be the same whether or not the amendments are relevant to this case and whether or not they affect our inquiry. -4- Levasseur, 70 F.3d at 193. We will follow the approach adopted _________ in Levasseur, considering each of the factors in turn. _________ -5- IV. DISCUSSION IV. DISCUSSION A. Prevalence of the error A. Prevalence of the error The constitutional error in this case was the limitation of Pettiway's right to cross-examine the victim. The victim was interviewed by a child protective investigator for the DCYF in September 1992, after the indictment of Pettiway, but prior to his trial. During that interview, she reported that she had been sexually abused by two other men that her mother had brought home. These incidents occurred subsequent to the alleged sexual abuse by Pettiway, and have been neither prosecuted nor proven false. See State v. Pettiway, 657 A.2d 161, 163 (R.I. ___ _____ ________ 1995). Pettiway was not permitted to introduce the DCYF report at trial, nor was he permitted to cross-examine the victim about the allegations contained therein. Id. Defendant-appellant was, ___ however, permitted to confront Melissa, his accuser, and challenge her credibility. Indeed . . . [the] trial justice gave defense counsel wide latitude to cross-examine Melissa fully in regard to the matters she testified to on direct-examination and . . . to explore in depth Melissa's memory about the incidents of abuse and her reasons for not reporting the abuse sooner. Id. at 164. ___ Pettiway claims that the excluded evidence would have enabled him to challenge the credibility of the victim by demonstrating a pattern of accusing her mother's boyfriends of sexual abuse. -6- B. Centrality of the issue affected by the error B. Centrality of the issue affected by the error By limiting the cross examination of the victim, Pettiway claims, the trial justice affected the defense's ability to challenge her credibility. We recognize that this case was, in part, a credibility contest between the victim and Pettiway. In this sense, the right to confront and attempt to impeach the victim was central to the defense. Our inquiry does not end with this determination, however. It is not enough to simply say that credibility was an important question, we must also consider the impact of the error on the credibility issue. We are not persuaded that testimony to the effect that the victim claimed to have been abused by other men -- an allegation that is very possibly truthful -- would have substantially affected the jury's credibility assessment. Indeed, it is possible that such testimony would have emphasized to the jury the lack of parental supervision in the household and made them more inclined to believe the testimony of the victim. ____ Furthermore, Pettiway has pointed to no place in the record, and has made no argument, to the effect that the allegations made by the victim were false. Nor did he give any indication that he intended to discredit those allegations in court. His current position appears to be that the mere mention of other allegations of abuse, without any evidence that those allegations were false, would sway the jury to the point of disregarding the entire testimony of the victim. -7- We also note that Pettiway was not foreclosed from challenging the victim's credibility, but was only prevented from pursuing questions pertinent to the DCYF report. It is simply too large an inferential leap for this Court to conclude that the admission of this evidence could have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1992). ______ __________ C. Relative Strength of the properly admitted evidence C. Relative Strength of the properly admitted evidence The final factor in the Levasseur test requires us to _________ examine the strength of the properly admitted evidence of guilt and determine whether "the error substantially affected the jury. Was the properly admitted evidence so strong that it overwhelmed the impact of the [error]?" Levasseur, 70 F.3d at 195. We _________ conclude that it was. The evidence admitted at trial consisted of: (1) the testimony of the victim; (2) the testimony of two police officers that defendant made an oral confession; and (3) defendant's written confession. See Pettiway v. Vose, 921 F. ___ ________ ____ Supp. at 63. The victim testified to eleven incidents of sexual molestation. She detailed one incident during which Pettiway touched her breast and penetrated her vagina with his fingers, and she mentioned several other, more general allegations of molestation. Id. Both detectives testified that Pettiway ___ admitted to sexually touching and digitally penetrating the victim. Id. In his written confession, Pettiway admitted to one ___ act of touching the victim's breast and one act of penetrating -8- her vagina, and stated that he touched her on three other occasions. The important point for present purposes is the fact that the confessions and the victim's testimony all relate the same incidents of touching in detail -- one touching of the breast and one act of vaginal penetration. Beyond these two events, the testimony and the written confession are both vague. The court submitted five counts of sexual abuse to the jury, and the jury returned guilty verdicts on two. Id. at 64. ___ Pettiway points out that the jury's verdict mirrors the victim's testimony and contends that the jury relied solely on this testimony and disregarded the allegedly coerced confession. In light of this fact, the defendant's theory goes, an error limiting his ability to impeach the credibility of the victim cannot be harmless. Appellee responds that the jury verdict mirrors the written confession and claims that it is this evidence that the jury found compelling. As a result, appellee argues, the error is harmless because it relates only to the testimony of the victim. We disagree that the verdict reflects a disregard for Pettiway's confession. The written confession, the oral confession, and the testimony of the victim were substantially similar. This collection of evidence from the two most reliable sources possible -- the victim and the accused -- is extremely persuasive and the error in this case is simply not consequential enough to undermine this evidence. First, as pointed out above, there is serious doubt about the probative value of the evidence -9- that Pettiway sought to introduce. Second, even if some doubts about credibility could have been placed in the minds of the jury, the oral and written confessions cannot so easily be overcome. They provide substantial corroboration of the victim's testimony and strong support for the verdict returned by the jury. Despite the attempts of both parties to present the jury's deliberations as focusing on only one piece of evidence, we see no reason why this must be so. The evidence, taken as a whole, is consistent and strongly supports the guilty verdicts. Even if the victim's testimony had been called into question -- an outcome that strikes us as unlikely -- the oral and written confessions provide sufficient evidence of guilt and corroboration of the testimony to conclude that the error was harmless. We also feel compelled to address Pettiway's claim that the oral and written confessions were coerced. This issue was specifically addressed by the state court. The trial justice, after a detailed inquiry into the claim of coercion and after hearing evidence on the issue from both sides, wrote: I do not believe that this defendant asked for an attorney in that interrogation room. I don't believe he asked for a telephone call, nor do I believe he asked to stop the interrogation. I find . . . first the verbal statements, then the written statements, were made with full consent of the will and knowingly and intelligently waving [sic] all his constitutional rights and that the State has now in my opinion proven . . . beyond a reasonable doubt . . . [that] the statements attributable -10- to the defendant were voluntarily [sic] and not of any coercion and that he was afforded all of his constitutional rights and he knowingly, intelligently, waived his rights. Trial Transcript I at 133-34. Such a finding of fact by the state court is entitled to great deference. See 28 U.S.C. 2254(d); Tart v. Commonwealth ___ ____ ____________ of Massachusetts, 949 F.2d 490, 504 (1st Cir. 1990); Tavares v. ________________ _______ Holbrook, 779 F.2d 1, 3 (1st Cir. 1985). On habeas corpus ________ review, we overturn such a finding of fact only if we "conclude[] that such factual determination is not fairly supported by the record." 28 U.S.C. 2254(d). We find, upon our own review of the record, that we must adopt this finding of fact. Pettiway claims that he was "under a lot of pressure . . . from the doctor" because he had "adult acne" and was taking tetracycline, yet he failed to introduce any evidence that this medication would affect his judgment. At trial, he admitted that he was told of his Miranda _______ rights, and that he understood that he did not have to answer any questions. Despite the fact that he understood these rights, he testified that he began to write the written confession only "a couple of minutes" after being advised of those rights. With reference to the written confession, he stated that he "wrote everything that they told [him] to write." Trial Transcript I at 103. Yet only a few pages later in the transcript, he states that he "can't even be sure" that he wrote the confession. Id. ___ at 106. If the defendant was aware of his rights, why was it so -11- easy for the detectives to coerce his confession? How could it be that "his will was completely overborne," Brief of Appellant at 4, when the entire interrogation lasted only one hour? If he claimed to have been coerced into writing the confession, why did he then express doubt about having written it? Upon review of the record, we conclude that there is ample support in the record for the findings of the trial court with respect to Pettiway's allegation of a coerced confession. V. CONCLUSION V. CONCLUSION We conclude, therefore, that the Sixth Amendment violation was harmless error and we affirm the district court's affirm ______ dismissal of the habeas corpus petition. The oral confession, the written confession, and the testimony of the victim amount to a powerful body of evidence. We do not believe that the admission of allegations made by the victim about other incidents of abuse could have overcome this evidence. The error did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. ______ -12-